<pre>
 1
 2
 3
 4
 5
 6
 7
 8                      UNITED STATES DISTRICT COURT
 9                     CENTRAL DISTRICT OF CALIFORNIA
10
11  NOREEN STATLER,                  )  Case No. CV 05-01213 AN
                                     )
12          Plaintiff,                )  ORDER RE PETITION
                                     )  FOR ATTORNEYS FEES
13      v.                           )  42 U.S.C. §406(b)
                                     )
14                                   )
    MICHAEL J. ASTRUE, Commissioner  )
15  of Social Security Administration,)
                                     )
16          Defendant.                )
                                     )
17
</pre>

## I. Background

Plaintiff's counsel, Jimmy O. Ewenike of the Law Offices of Jimmy Ewenike, ("Counsel"), has filed a petition for attorneys fees (dkt. #29) ("Petition") pursuant to 42 U.S.C. § 406(b). Counsel seeks an award of §406(b) fees in the gross amount of $16,828.38, subject to an offset for the $6,000.00 in EAJA fees previously paid, resulting in a net award of $10,828.38. (Petition at 1:18-20.) The Petition is supported by Counsel's attached declaration that is inaccurately referred to as "Affidavits" and identifies the wrong person as the Plaintiff in the caption. Counsel's supporting declaration and the attached exhibits establish that, after this Court's remand, the Social Security Administration ("SSA") awarded Plaintiff back benefits in the total amount of $67,313.52. A recap of Counsel's time spent is attached to Counsel's declaration. The recap incorrectly reports that he spent 45.2 hours

of time representing Plaintiff in this case; in fact, the Court finds the time spent in the recap correctly adds up to 48.2 hours, not 45.2. (Petition at 1:19, Ewenike Decl., ¶ 9, Appendix 1.) The Commissioner has filed a response to the Petition with his analysis (dkt. #31). Counsel filed no reply.

## II. Discussion

### A. Standard of Review

Under § 406(b), the Court may award a "reasonable" amount of attorneys fees to a successful claimant's counsel, but the fee cannot exceed 25 percent of the total of the past-due benefits awarded to the claimant.

In *Gisbrecht v. Barnhart*, 535 U.S. 789, 122 S. Ct. 1817 (2002), the Supreme Court resolved a division among the circuits over the method used to calculate § 406(b) fees. The *Gisbrecht* majority found § 406(b) is designed to control, not displace, contingency fee agreements in social security cases. 535 U.S. at 793, 807. In doing so, the Court rejected the lodestar method[1] used in the Ninth Circuit and several other circuits as the exclusive means for determining the reasonableness of § 406(b) fees. The Court explained the lodestar method was primarily "designed to govern the imposition of fees on the losing party" in fee-shifting cases, therefore, its use in social security cases was not entirely compatible because the attorney's fees sought under § 406(b) are "paid directly with funds withheld from their clients' benefits awards[.]" *Id.* at 804 n. 13, 807; *see also*, *Short v. Sullivan*, 1992 WL 38404, *2 (N. D. Ill., filed Feb. 25, 1992) ("For every dollar a court approves in fees, a corresponding decrease in the claimant's award occurs. Thus, courts must balance two competing policies in reviewing attorneys' petitions for fees in social security cases.")

On the other hand, *Gisbrecht* did not find contingency fee agreements that capped fees at or below § 406(b)'s statutory ceiling of 25 percent of the back benefits awarded were reasonable *per se* or presumptively reasonable despite its finding that "[t]raditionally and today, 'the marketplace for Social Security representation operates largely on a contingency

---

[1] Under the lodestar method, a reasonable fee is calculated by multiplying the "number of hours reasonably devoted to each case . . . by a reasonable hourly fee." *Id.* at 797-98.

fee basis.'" *Id.* at 792, 804. Instead, *Gisbrecht* held § 406(b) instructs lower federal courts to make a reasonableness check that initially credits the contingency fee agreement within the 25 percent statutory ceiling and then places the burden upon the successful claimant's attorney to show "the fee sought is reasonable for the services rendered." 535 U.S. at 807. However, the type of check to be used was left to the sound discretion of the district courts since *Gisbrecht* found "[j]udges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of an appeal, ordinarily qualify for highly respectful review." *Id.* at 808. Nonetheless, *Gisbrecht* provided some guidance by identifying the following examples as factors that, standing alone or in combination, warrant a reduction: (1) the result achieved; (2) counsel's "substandard" character of representation;[2] (3) delay by counsel (justifying a reduction to prevent counsel from profiting from the accumulation of benefits while the case is pending due to any foot-dragging); (4) "*if the benefits are large in comparison to the amount of time counsel spent on the case* [thereby resulting in a windfall], *a downward adjustment is similarly in order.*" ("windfall factor"); and (5) counsel's record of the hours spent representing the claimant and counsel's normal hourly billing rate for non-contingency work. *Id.* at 808 (emphasis added). Another factor to consider is the attorney's risk of loss in taking the case on a contingency basis. *Id.* at 805; *see Black v. Astrue*, No. 05-56628, 2007 WL 1202886, *1 (9th Cir. (Cal.) Apr. 24, 2007).[3]

Recently, the Ninth Circuit affirmed two of the undersigned Magistrate Judge's orders that partly granted § 406(b) fee requests. *Crawford v. Astrue*, 554 F.3d 454 (9th Cir. 2008). In doing so, the *Crawford* majority approved of the *Gisbrecht* methodology and factors this Court has considered in ruling on § 406(b) motions. *Id.* 554 F.3d at 861-864. The *Crawford* majority also stated:

> We read *Gisbrecht* not to prohibit a district court from making lodestar-

---

[2] *Gisbrecht* cites *Lewis v. Secretary of Health & Human Services*, 707 F.2d 246, 251 (6th Cir. 1983) in support of this factor.

[3] Pursuant to FRAP 32.1, *Black* is cited for its persuasive value.

Page 3

1 type calculations, but only from relying exclusively on such calculations and
2 refusing to consider the contingency-fee agreement.

* * * * *

4 . . . [W]hat Gisbrecht held was that "§ 406(b) does not displace
5 contingency-fee agreements within the statutory ceiling; instead, § 406(b)
6 instructs courts to review for reasonableness fees yielded by those agreements."
7 The methodology by which a district makes such reasonableness determinations
8 is for that court to select in the exercise of its sound discretion. In making these
9 determinations, it would be preferable for a district court to begin with the
10 contingency-fee agreement and decrease from there, rather than increase from
11 a lodestar calculation. It does not seem to be an abuse of discretion, however,
12 to use the latter approach as long as the court takes the necessary factors into
13 consideration.

14 *Crawford*, 545 F.3d at 862.

15 In light of *Crawford*, this Court shall apply its same *Gisbrecht* methodology here.

16 **B.    The Contingency Fee Agreement**

17 The Petition is supported by a copy of the mutually executed contingency fee
18 agreement between Plaintiff and Counsel's law firm. (Petition, Ewenike Decl., ¶8, Attach.
19 2.) Plaintiff agreed to pay Counsel attorney fees corresponding to 25 percent of the back
20 benefits awarded for work before the Court -- the statutory maximum. As discussed above,
21 the SSA ultimately awarded Plaintiff back benefits of $67,313.52. Consequently, under the
22 terms of the fee agreement, Plaintiff is contractually obligated to pay Counsel total attorneys
23 fees of $16,828.38 ($67,313.52 x .25 = $16,828.38). The Commissioner withheld this
24 amount of back benefits to cover Counsel's attorney fees in the event this Court finds no
25 further reduction is warranted under *Gisbrecht*.

26 The proof of service attached to the Petition reflects Counsel served Plaintiff with a
27 copy of the Petition. The Court's records do not show Plaintiff filed any objections to the
28 Petition despite having an opportunity to do so. Nor does the record indicate the fee

agreement was the product of fraud, coercion, or overreaching.

## C.  The Reasonableness Check

### 1.  Character of Representation

Counsel represents that he has "a total of 22 years experience representing claimants for social security benefits before the agency, in the U.S. district court and in the 9th Circuit Court of Appeals." (Petition at 2:21-23.) The Court takes judicial notice of its own records that disclose Counsel has represented about 56 social security claimants in the Central District of California, including several cases assigned to this Court.

After Counsel commenced this action on Plaintiff's behalf and the Commissioner filed his answer and the administrative record, the parties filed the Joint Stipulation ("JS") (dkt. #17) in which Plaintiff raised four disputed issues challenging the Commissioner's adverse final decision. The Court ultimately found one of the four issues warranted a remand, therefore, the Court entered judgment remanding this case to the SSA. (Report and Recommendation ("R&R") (dkt. #19); Judgment (dkt. #21).)

As discussed above, *Gisbrecht*, citing *Lewis*, a Sixth Circuit case, found a reduction of requested § 406(b) fees is warranted for substandard representation; that is, where some or all of counsel's efforts did not make a meaningful and material contribution towards the result achieved. *Id*. at 808. The particular substandard representation in *Lewis* consisted of counsel's poor preparation for the initial administrative hearing before the Administrative Law Judge ("ALJ") (thereby necessitating further administrative and federal review) and over billing for the services performed. 707 F.2d at 249. The Sixth Circuit found counsel over billed his client by: (1) billing two hours of time to prepare a four-sentence brief with the district court that "contained no case citation or any other manifestation of legal research;" (2) billing two hours of time to read a two-page document filed by the Secretary that did not have any case citations; and (3) billing two hours to prepare another four-sentence document. *Id*.

Here, Counsel's recap of his time shows he spent a total of 48.20 hours working on this case (not 45.2 hours as stated in his Petition). This time includes 29.5 hours to analyze

the administrative record and prepare Plaintiff's voluntary remand statement in accordance with the Court Case Management Order. A properly prepared voluntary remand statement presents the factual and legal basis of a claimant's position in a manner designed to persuade the Commissioner to stipulate to a voluntary remand. The voluntary statement prepared by Counsel did not result in stipulated remand even though this Court ultimately determined a remand was warranted but for reasons that were not fully developed by Counsel. Counsel's recap reports that he spent an additional 11.3 hours to research and prepare Plaintiff's contentions relating to the four issues in the Joint Stipulation. (Petition at 9.)

The Court finds that 29.5 hours to prepare Plaintiff's voluntary remand statement is excessive. A social security practitioner with a similar background and experience should take no more than 15.0 hours -- two full work days -- to properly prepare Plaintiff's voluntary remand statement, particularly where, as here, the issues were not complex or novel. Therefore, the Court finds Counsel over billed Plaintiff by 14.5 hours (29.5 - 15.0 = 14.5), and that the total amount of reasonable time is 33.7 hours (48.2 - 14.5 = 33.7) or an even 34 hours rounded up.

Further, Plaintiff's contentions did not meaningfully and materially contribute to the result achieved before this Court. Plaintiff's contentions in support of the four disputed issues were prolix and unfocused. The Court ultimately granted relief for a reason that Counsel barely touched upon in connection with the second disputed issue. Specifically, the Court found a remand was appropriate because the ALJ's finding of non-disability conflicted with certain findings and opinions expressed by Dr. Dusovich, an examining psychiatrist, whose findings and opinions the ALJ gave "significant weight." (R&R at 6:13-26.). Dr. Dusovich found Plaintiff's major depressive order and other mental impairments limited her to perform work in what he characterized as "a low stress atmosphere." (*Id.*) Nonetheless, the ALJ found, in a conclusory fashion, that Dr. Dusovich's findings and opinion established that Plaintiff's only mental limitation was "work with complex job instructions," and that she was otherwise capable of working on a "sustained basis." (*Id.*)

In discussing the second disputed issue, Plaintiff's counsel did assert the ALJ's

reading of "Dr. Dosovick's [sic] opinions is misleading because he failed to mention that Dr. Dosovick [sic] also opined that the only work plaintiff would be able to perform are [sic] low-stress jobs." (JS at 23:17-20.) However, instead of making what should have been an effort to explain why Dr. Dusovich's opinion otherwise supported Plaintiff's position, Plaintiff's counsel remarkably proceeded with an unnecessarily prolix and unpersuasive attempt to discredit Dr. Dusovich's findings and opinions. (*Id.* at 23:25-27:12.)

Accordingly, the Court finds this factor warrants a substantial reduction.

**2.   Results Achieved**

The Court finds this is a situation where the result achieved is not necessarily indicative of the character of representation for the reasons explained above. Consequently, this factor also warrants a reduction.

**3.   Counsel's Risk of Loss**

As discussed above, Counsel has represented 56 social security claimants before this Court in the 22 years he has practiced law. Consequently, Counsel should have a substantial amount of statistical data available to show what the level of his risk was in taking this case on a contingency basis relative to the nature and scope of his overall practice. Relevant data would include: (1) his personal success rate in social security cases verses other types of litigation matters that he handles in his practice; (2) the rate of success of other attorneys (if any) in his law firm; (3) the average time he spends per case in successful and unsuccessful cases; and (4) the percentage of cases he accepts after a pre-filing merit assessment that is presumably made in compliance with Fed.R.Civ.P. 11(b). Yet, Counsel has not disclosed or proffered any of this data. Instead, Counsel simply makes broad and conclusory risk assertions that shed no light on the specific risk of loss that he incurred in taking this particular case.

This Court also finds the following factors demonstrate Counsel incurred little risk of loss in taking this case: (1) this case did not involve any novel or complex issues of fact and law; (2) Counsel did not incur any risk of non-payment because, as *Gisbrecht* recognized, the maximum statutory amount of § 406(b) fees that can be recovered are withheld from a

portion of the benefits awarded to the claimant, *Gisbrecht*, *id*. at 804 n.13; (3) the Court granted judgment in Plaintiff's favor even though, as discussed above, Plaintiff's counsel's contentions did not materially contribute to the Court's decision; (4) Counsel's representations about his years of practice and the number of social security cases he has handled indicates he has accepted an approximate average of 2 to 3 social security cases a year (56 cases ÷ 22 years of practice = 2.5 cases/year), therefore, its reasonably clear that social security cases represent a small amount of his overall practice; (5) Counsel did not incur any risk in the primary costs he advanced, specifically, the $350.00 filing fee required by 28 U.S.C. § 1914(a), because the Court granted Plaintiff's request to proceed *in forma pauperis* (dkt. ##1-2); and (6) Counsel only advanced $35.00 in costs for serving the summons and complaint (Petition, Ewenike Decl., ¶ 9, Appendix 1, Itemized Costs).

Based upon the foregoing, the Court finds this factor warrants a substantial reduction in the requested fees.

**4.  Delay**

The complaint was filed on December 21, 2005. In accordance with the Court's Case Management Order dated December 29, 2005, the certified administrative record and answer were filed on July 26, 2006. The parties submitted the Joint Stipulation on August 25, 2006, the Report and Recommendation was issued on September 7, 2006, and Judgment was entered on November 16, 2006. Therefore, the Court finds this is not a situation where the amount of back benefits accumulated due to any excessive delay attributable to counsel.

No reduction is warranted for this factor.

**5.  Windfall Factor**

*Gisbrecht* instructs a downward adjustment is in order "if the benefits are large in comparison to the amount of time counsel spent on the case." *Id*. at 808. Although *Gisbrecht* did not expressly say so, this Court finds the amount of time used to compute this factor must consist of the reasonable amount of time spent, not the actual time spent where, as here, the Court finds the actual amount of time spent was excessive under the circumstances. Any other interpretation would undermine the reasonableness check. For

example, allowing attorneys to use an inflated figure would artificially reduce the *de facto* hourly rate and mask the true degree of the windfall. The net effect would encourage over billing. This concept is aptly illustrated here.

Plaintiff was awarded $67,313.52 of back benefits and Counsel's time recap shows he spent 48.2 hours of time working on this case. But, as discussed above, this Court has found the reasonable time spent is 34 hours. The reasonable time spent (34 hours) yields a *de facto* hourly rate of $1,979.81 ($67,313.50 ÷ 34). In contrast, the reported time spent (48.2) artificially reduces the *de facto* hourly rate to $1,396.55 ($67,313.50 ÷ 48.2) -- a difference of $583.26, which in itself is a rather substantial *de facto* hourly rate. Regardless of whether the *de facto* hourly rate is $1,396.55 or $1,979.81, both figures constitute manifest windfalls to a Court that is very "accustomed to making reasonableness determinations in a wide variety of contexts." *Gisbrecht*, *id.* at 808. This is particularly true given that the quality of the work performed did not substantially contribute to the result achieved before this Court.

Accordingly, the Court finds this factor warrants a substantial reduction.

### 6.     **Hours Expended and Attorney's Normal Billing Rate**

Counsel has provided a record of the time he spent working on this case but he has not disclosed whether he has a normal hourly billing rate for non-contingent work that he or his law firm charged its clients during the same period of time that he rendered services to Plaintiff in this case. The only evidence in the record of an ostensibly reasonable hourly rate is gleaned from the parties' stipulation for $6,000.00 in EAJA fees and the Court's related Order thereon, which appears to be based upon the actual, not reasonable, time spent in this contingency case. Regardless, using these figures, the record discloses Counsel's stipulated hourly rate for the relevant period is $124.48 ($6,000 ÷ 48.2); roughly the statutory EAJA fee that Congress has determined to be a reasonable hourly rate in these cases. Consequently, when compared to the $1,979.81 *de facto* hourly rate derived from the reasonable time spent, Counsel is basically asking his client to pay him § 406(b) fees in an amount that is roughly sixteen times greater than Counsel's stipulated hourly rate ($1,979.81

÷ $124.48 = 15.9). The rate using the reported time spent is more than eleven times greater than Counsel's stipulated hourly billing rate ($1,396.55 ÷ 124.48 = 11.2).

Even assuming, without finding, Counsel normal hourly rate for non-contingency fee cases during the relevant period was $500.00, this would still yield a fee award that is nearly four times greater than the *de facto* hourly rate derived from the reasonable time spent ($1,979.81 ÷ $500 = 3.9). Accordingly, this factor warrants a reduction.

### 7.  The Amount of Reasonable § 406(b) Fees

*Gisbrecht* does not provide any standard for determining the amount of § 406(b) fees that should be awarded where the district court finds a reduction is warranted to prevent a claimant from being overcharged.

In *Ellick v. Barnhart*, 445 F. Supp. 2d 1166 (C.D. Cal. 2006), the court conducted an extensive national survey of post-*Gisbrecht* cases in order to glean what, if any, uniform method had emerged. The forty-three reported cases found by the court fell into three distinct groups. The first group, which consisted of slightly more than half of the cases (23), the courts granted fee requests in the full amounts of the statutory ceiling. *Id*. at 1168-70. The second group had eight cases where the approved fees varied in the amounts but the requested amounts were below the 25 percent statutory ceiling. *Id.* at 1170. The third group represented roughly 30 percent of the cases (12) where the courts found a reduction in the requested fees was warranted and the "decisions var[ied] significantly in the manner" used to reduce the fees. *Id*. at 1171. The fees awarded in this third group were "in amounts greater than the amounts that would have been recovered under counsel's standard hourly rates, but less than the requested 25 percent of past-due benefits." *Id*. at 1171. The approved *de facto* hourly rates also ranged between $180.95 to $977.20. *Id*. Overall, *Ellick* further found that attorneys were being compensated at anywhere from 1.01 to 6.55 times their normal billing rate. *Id*. at 1169-70, 1173.

*Ellick* found its survey suggested there was no uniform approach but that it appeared "most (but not all) of these courts have drawn on a traditional lodestar analysis in evaluating whether a full contingent percentage recovery would amount to a "windfall," within the

Page 10

meaning of *Gisbrecht*." *Id.* at 1172. The court found the requested fee, which would result a *de facto* hourly rate of $933 or an amount that was 4.24 times the attorney's normal billing rate, was excessive, therefore, the court reduced the requested fees to a *de facto* hourly rate of $550 or 2.5 times the attorney's normal billing rate, apologizing for the "regrettable imprecision of its analysis." *Id.* at 1172-73.

In light of the foregoing, the Court finds Counsel's request for § 406(b) fees of $16,828.38, the full amount of the statutory maximum allowed under the contingency fee agreement, is not reasonable and that Counsel has not met his burden of showing that a reduction is not warranted. To the contrary, the Court finds three of the most important *Gisbrecht* factors warrant a substantial reduction. This case did not present any complex or novel issues. The reasonable amount of time for an attorney with a comparable level of experience to achieve a successful result is 34 hours. Despite citing *Gisbrecht* in his Petition, Counsel did not voluntarily identify the normal hourly rate that he charged clients in non-contingency cases during the relevant period. The only evidence in the record of a reasonable hourly rate consists of the stipulated hourly rate for the EAJA fees, which is about $125.00 per hour. Under the circumstances, the Court finds a reasonable *de facto* hourly rate for the work performed is $300.00, an amount that is still 2.4 times the stipulated EAJA rate, and reasonably compensates Counsel for the nominal risk of loss and his reasonable efforts. Accordingly, Counsel is awarded § 406(b) fees in the total gross amount of $10,200.00 ($300/hour x 34 hours), less $6,000 for the EAJA fees he has already been paid, for a net fee award of $4,200.00.

///

///

## III. CONCLUSION

Based upon the foregoing considerations, the Petition is granted in part; net fees under §406(b) in the amount of $4,200.00, shall be paid out of the sums withheld by the Commissioner from Plaintiff's benefits.

IT IS SO ORDERED.

DATED: January 26, 2009      /s/ Arthur Nakazato
ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE